**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| vs. | § § | NO. 2:08-CR-001 |
| CHARLES EDWARD LINCOLN, III. | § § § | |
| UNITED STATES OF AMERICA, | § § § | |
| vs. | § § | NO. 2:07-MC-075 |
| CHARLES EDWARD LINCOLN, III. | § § § | |
| DAVID SIBLEY, | § § § | |
| Plaintiff, vs. | § § § | NO. 2:07-CV-258 |
| CHARLES EDWARD LINCOLN, III, | § § § | |
| Defendant. | § | |

**ORDER**

On February 1, 2008, the Court held a criminal contempt hearing in the above-styled action. For the reasons discussed below, the Court holds the Defendant, Charles Edward Lincoln, in criminal contempt and sentences him to time served.

**I.      Factual and Procedural Background.**

During the February 1, 2008 criminal contempt hearing, the following facts were testified to, proffered, or otherwise admitted to the record. These facts are not in dispute.

1

Defense counsel represented to the Court that Defendant Lincoln was "not challenging any of the facts of this case."[1] (2/1/08 Hearing at 1:52:48-1:53:32.)

### A. The Notice of Removal.

On May 16, 2007, David Sibley filed suit against Defendant Lincoln in the 94th Judicial District Court of Nueces County, Texas. (D.E. (258) 1, Ex. A.)[2] On June 5, 2007, Defendant Lincoln removed the action from state court to this Court, alleging that federal subject matter jurisdiction existed pursuant to 28 U.S.C. §1332(a)(1), diversity of citizenship.[3] (D.E. (258) 1.) Specifically, Defendant Lincoln claimed that Mr. Sibley, the Plaintiff, was a citizen of Texas and that he, Defendant Lincoln, was a citizen of Florida. (Id.)

On June 11, 2006, the Court remanded the action to state court. (D.E. (258) 6.) The Court found that Defendant Lincoln had not met his burden of proving that the amount in controversy exceeded $75,000. (Id.)

### B. The Motion for Sanctions.

On June 25, 2007, Mr. Sibley filed a motion for sanctions against Defendant Lincoln in this Court. (D.E. (258) 9.) Mr. Sibley argued that sanctions were warranted because Defendant Lincoln had misrepresented his citizenship to the Court in his notice

---

[1] Defense counsel did assert a challenge to the Court's jurisdiction to hear a motion for sanctions filed in a case *after* that case had been remanded to state court. (2/1/08 Hearing at 1:52:48-1:53:32.) The Court, however, had already ruled on this issue, determining that its did have jurisdiction to hear such motion. (D.E. (258) 25.) The Court, thus, declined to revisit this issue during the February 1, 2008 hearing.

[2] As used in this order, "D.E. (258)" refers to docket entries in Sibley v. Lincoln, 2:07-cv-258, "D.E. (75)" refers to docket entries in United States v. Lincoln, 2:07-mc-0075, and "D.E (1)" refers to docket entries in United States v. Lincoln, 2:08-cr-001.

[3] For purposes of Sibley v. Lincoln, 2:07-cv-258, Defendant Lincoln proceeded *pro se*. Defendant Lincoln is a former attorney who was disbarred from the practice of law for falsely representing his social security number. See Charles Edward Lincoln, Case No. 01-C-04695-AIN, Case No. 02-J-11673-AIN (Ca. State Bar Court June 18, 2003).

of removal. (Id.) Specifically, Mr. Sibley argued that Defendant Lincoln was not a citizen of Florida, but was, in fact, a citizen of Texas. (Id.) Mr. Sibley attached to his motion a June 8, 2007 pleading, filed by Defendant Lincoln in the Southern District of Florida, listing Defendant Lincoln's address as 6102 Valleyview Drive, Lago Vista, Texas. (Id., Ex. A.)

A PACER search revealed that, in the months preceding the litigation between Mr. Sibley and Defendant Lincoln, Defendant Lincoln represented to the United States District Court for the Southern District of Florida that he was a citizen of *Texas* for purposes of maintaining federal subject matter jurisdiction, pursuant to 28 U.S.C. §1332(a)(1), in that forum. See Lincoln v. Washington Mutual Bank, N.A., *et al.*, 0:07-cv-60273-WPD (S.D. Fla. Feb. 27, 2007).[4, 5] In his complaint, filed February 27, 2007, Defendant Lincoln stated:

> The undersigned Plaintiff Charles Edward Lincoln wishes to maintain Federal Jurisdiction over his issues in this case, because it is simply easier for a "foreigner" (a resident of *Texas*) to maintain an action in Federal Court than State Court in a "foreign" state . . .

(D.E. (60273) 1, ¶ 3 (emphasis added).) Defendant Lincoln listed as his address "6102 Valleyview Drive, Lago Vista, Texas, 78645." (Id. at 10.) He maintained this address through the litigation, filing several documents, including this address in the signature

---

[4] As used in this order, "D.E. (60273)" refers to docket entries in Lincoln v. Washington Mutual Bank, N.A., *et al.*, 0:07-cv-60273-WPD (S.D. Fla.).

[5] The Court did not review this case on the record during the February 1, 2008 hearing. The Court, however, takes judicial notice of this case at this time. Taylor v. Charter Medical Corp., 162 F.3d 827, 830-831 (5th Cir. 1998) (stating that a court may take judicial notice of a document filed in another court to establish the fact of such document, provided that the court does not take judicial notice of the truth of matters asserted therein). The Court does not take judicial notice of this case to demonstrate the truth of the matters asserted therein, *i.e.*, that Defendant Lincoln was a citizen of Texas; rather, the Court takes judicial notice of this case to demonstrate that Defendant Lincoln represented different citizenship to different federal courts at the same time for purposes of maintaining federal subject matter jurisdiction in both forums.

3

line, *after* the inception of the litigation between him and Mr. Sibley.  (See, e.g., D.E. (60273) 10 (filed May, 18, 2007); D.E. (60273) 12 (filed June 8, 2007); D.E. (60273) 13 (filed June 8, 2007); D.E. (60273) 16 (filed June 19, 2007); D.E. (60273) 21 (filed July 10, 2007).)

On July 10, 2007, the Court entered a notice of setting, scheduling a hearing on Mr. Sibley's motion for sanctions for July 23, 2007.  (D.E. (258) 10.)[6]  Defendant Lincoln responded by filing a series of motions, asserting that the scheduled hearing date should be postponed.  Defendant Lincoln first filed, on July 19, 2007, a motion to continue the hearing.  (D.E. (258) 14.)  The Court denied his motion.  (D.E. (258) 16.)  He also filed, on July 19, 2007, a "Suggestion of Bankruptcy of Cheryl L. Anderson & Victor Dale Anderson," arguing that Sibley v. Lincoln should be stayed based on a bankruptcy petition filed by the Andersons with whom he claimed to have an identity of interest.[7]  (D.E. (258) 15.)  The Court declined to institute such stay.  (D.E. (258) 16.)  Then, on July 23, 2007, Defendant Lincoln moved to stay the case pending a motion for leave to certify an interlocutory question regarding the Court's jurisdiction.  (D.E. (258) 22.)  The Court denied his motion.  (D.E. (258) 25.)  Finally, he sent a series of emails to Mr. Sibley and the Court's case manager, Sondra Scotch, protesting the scheduled

---

[6] To schedule this hearing, the Court's case manager, Sondra Scotch, called Defendant Lincoln at the Austin, Texas telephone number that he had provided to the Court.  (2/1/08 Hearing at 1:49:23-1:51:24.)  Ms. Scotch had no difficulty reaching him at that number.  (Id.)

[7] In the suggestion of bankruptcy, Defendant Lincoln asserted that he had business and real estate investments, "including but not limited to Lots 13-14, Block E, Lago Vista Section One, 6102-6200 Valleyview Drive, Lago Vista, Texas 78645, and 3701 Alamo Cove, Lago Vista, Texas 78645 …"  (D.E. (258) 15.)  This contradicts his representation to the Central District of California court that he is indigent and entitled to court-appointed counsel.  See infra section G.

4

hearing date. (D.E. (258) 19, 20, 21.)[8] The last of these emails, sent July 22, 2007, at 6:45 PM, stated, "I cannot attend the hearing Monday morning in Corpus Christi …" (D.E. (258) 21.) Defendant Lincoln's sole explanation for his inability to attend was that he had assumed that the hearing would be stayed or continued, and had not made the requisite travel arrangements. (Id.)

### C. The July 23, 2007 Hearing.

On July 23, 2007, at 10:00 AM, the Court held a hearing on Mr. Sibley's motion for sanctions. After the case was called, Mr. Sibley registered his appearance. Defendant Lincoln, however, did not appear. A Court Security Officer, Mr. Adrian Perez, called Defendant Lincoln's name three times in the public area of the courthouse but there was no response. (2/1/08 Hearing at 1:53:32-1:53:42.)

### D. The Criminal Contempt Proceeding.

On July 23, 2007, the Court entered a notice of criminal contempt proceeding and order to show cause, ordering Defendant Lincoln to appear before the Court on September 7, 2007, and show cause why he should not be held in criminal contempt for failing to appear at the July 23, 2007 sanctions hearing. (D.E. (75) 1.) The Court also reset the hearing on Mr. Sibley's motion for sanctions for September 7, 2007, at 1:15 PM, coincident with the criminal contempt hearing. (D.E. (258) 24.)

Defendant Lincoln again responded by filing a series of motions contesting his obligation to appear before this Court. On August 27, 2007, Defendant Lincoln filed a motion for recusal, which the Court denied. (D.E. (75) 4-5, 7-8.) Defendant Lincoln then sought, on September 5, 2007, leave for his "attorney," Montana Senator Jerry

---

[8] While Defendant Lincoln did not file these emails with the Court, the Court ordered that they be docketed to create a public record of all of Defendant Lincoln's communications with the Court.

O'Neil, to appear on his behalf at the September 7, 2007 hearing, and requested a legislative continuance of the hearing based on concurrent Montana state legislative proceedings. (D.E. (75) 9.) Because Mr. O'Neil is not an attorney licensed to practice law in any state of the United States, the Court denied this motion, rendering Defendant's request for a legislative continuance moot.[9] (D.E. (75) 14.) Finally, on September 7, 2007, at 12:43 AM, Mr. O'Neil emailed, on Defendant Lincoln's behalf, a first amended motion for leave to appear as attorney-in-charge, objections to the July 23, 2007 order to show cause, and a motion for a continuance to Ms. Scotch and the Assistant U.S. Attorneys prosecuting the criminal contempt charge against Defendant Lincoln. (D.E. (75) 16.) The Court denied Defendant's motions. (D.E. (75) 17.)

### E. The September 7, 2007 Hearing.

On September 7, 2007, at 1:15 PM, the Court held the scheduled criminal contempt hearing, and the reset hearing on Mr. Sibley's Motion for Sanctions. After the case was called, Mr. Sibley registered a notice of appearance. Defendant Lincoln, however, did not appear.

The Court sent a Court Security Officer, Mr. Eugenio Solis, Jr., outside to call Defendant Lincoln's name in the public area of the courthouse. (2/1/08 Hearing 1:53:42-1:54:22.) When Mr. Solis returned, he informed the Court that Defendant Lincoln was not present, but that Defendant Lincoln's assistant, Mr. Peyton Freeman, was in the

---

[9] The Court discovered, through a PACER search, that Mr. O'Neil has a history of engaging in the unauthorized practice of law and has been held in contempt and permanently enjoined by the State of Montana from practicing law without a license. Mont. Supreme Court Comm'n on the Unauthorized Practice of Law v. O'Neil, 2006 MT 284, ¶¶ 1, 88, 91 (Mont. 2006). In the present case, Mr. O'Neil sought to be admitted *pro hac vice*, for purposes of representing Defendant Lincoln at the September 7, 2007 hearing, based on his "admission to practice before the Blackfeet Tribal Court System." (D.E. (75) 9.) The Court correctly noted, in its order denying Mr. O'Neil's motion for leave to appear, that the federal court need not recognize attorneys licensed to practice before the tribal court. (D.E. (75) 14.)

6

clerk's office attempting to file a document. (Id.) The Court asked Mr. Solis to request that Mr. Freeman come to the courtroom. (Id.)

Mr. Freeman accompanied Mr. Solis to the courtroom. (9/7/07 Hearing at 1:23:15-1:23:30, 1:25:50-1:28:56.) He provided the Court with a copy of the document that he was attempting to file, which was the first amended motion for leave to appear as attorney-in-charge, objections, and motion to continue that had been emailed to Ms. Scotch earlier that day. (Id.; D.E. (75) 16, 19.) He also informed the Court that Defendant Lincoln was aware of the hearing, but was currently located in Montana. (9/7/07 Hearing at 1:25:50-1:28:56.)

Based on Defendant Lincoln's repeated failure to attend scheduled hearings in violation of the Court's orders, on September 10, 2007, the Court issued a bench warrant for Defendant Lincoln's arrest. (D.E. (75) 20.)

### F. Defendant Lincoln's Actions Following the September 7, 2007 Hearing.

On September 11, 2007, Defendant Lincoln filed a notice of appeal of every order docketed in United States v. Lincoln, 2:07-mc-75, including the (1) order to show cause (D.E. (75) 1), (2) order striking defendant's motion for recusal for procedural deficiencies (D.E. (75) 5), (3) order denying defendant's motion for recusal (D.E. (75) 8), (4) order striking defendant's motion for leave for Jerry O'Neil to appear as attorney-in-charge based on procedural deficiencies (D.E. (75) 11), (5) order denying defendant's motion for leave for Jerry O'Neil to appear as attorney-in-charge (D.E. (75) 14), (6) order denying defendant's first amended motion for leave for Jerry O'Neil to appear as attorney-in-charge (D.E. (75) 17), and (7) bench warrant for Defendant Lincoln's arrest. (D.E. (75) 21.) Defendant Lincoln then filed an emergency motion to stay the effect of the bench

warrant pending appeal. (D.E. (75) 22.) On September 14, 2007, the Court denied Defendant Lincoln's emergency motion. (D.E. (75) 22.)

Defendant Lincoln then relocated to Canada. (2/1/08 Hearing at 1:54:30-1:57:39.) His whereabouts were discovered when United States border patrol agents detained his assistant, Mr. Peyton Freeman, returning from Canada to the United States. (Id.) The border patrol agents saw, in plain view, a book about the Unibomber in Mr. Freeman's car. (Id.) This prompted a more thorough search, which yielded a video that appeared to have been taken while driving around the Vancouver airport. (Id.) Upon questioning, Mr. Freeman informed the border patrol agents that he had just dropped a "domestic terrorist" off at the Vancouver airport, and that said terrorist was boarding a plane to Mexico City. (Id.) Mr. Freeman then revealed that this terrorist was none other than Defendant Lincoln. (Id.) The border patrol agents determined through the Department of Homeland Security that there existed an outstanding warrant for Defendant Lincoln's arrest. (Id.) Border Patrol then contacted the U.S. Marshals Service, who contacted the Mexican authorities and requested that said authorities prevent Defendant Lincoln from entering Mexico. (Id.)

The Mexican authorities detained Defendant Lincoln in Mexico. (Id.) On or around December 9, 2007, he was placed on a plane returning to Canada via Los Angeles, California. (Id.) When the plane stopped in Los Angeles, Defendant Lincoln was taken into custody by the U.S. Marshals Service. (Id.) On December 10, 2007, he made an initial appearance and had a bond hearing in the United States District Court for the Central District of California. (Id.) The U.S. Marshals Service then transported him to Corpus Christi, Texas. (Id.) He arrived in Corpus Christi, Texas, on January 25, 2008,

and made an initial appearance before the magistrate judge later that day.  (2:08-cr-001 Minute Entry (Jan. 25, 2008).)

### G. Central District of California Court Documents.

The United States District Court for the Central District of California forwarded documents to this Court reflecting the California proceedings.  (2/1/008 Hearing at 1:57:53-1:58:17.)  The Court reviewed excerpts from these documents during the February 1, 2008 criminal contempt hearing.  (Id.)  Specifically, the Court noted that Defendant Lincoln was provided with court-appointed counsel based on his representation to the Central District court that he could not afford to pay an attorney.  (Id.)  The minutes of his initial hearing, however, reflect that Defendant Lincoln informed the magistrate judge that he had the funds available to charter a plane to expedite his transfer from California to Corpus Christi, Texas. [10]  (Id.; D.E. (1) 1.)

In addition, the Pretrial Services Report reflects that Defendant Lincoln represented to the Central District court that he had resided in Tarpon Springs, Florida from July 2007 to September 2007, and that, for twenty years prior to that, he had lived in Lago Vista, Texas.  (2/1/008 Hearing at 1:58:18-1:58:45.)  The Court noted that this representation directly contradicted Defendant Lincoln's assertion in his Notice of Removal that, on May 16, 2007, he was a citizen of Florida.  (Id.; D.E. (258) 1.)  The Court asked Defendant Lincoln to explain this discrepancy.  Defendant Lincoln responded, through his attorney, that his residence was "changed around May," and that he may have misspoken to the Central District court, or the court may have made a transcription error.  (2/1/08 Hearing at 2:02:02-2:02:38.)

---

[10]   Defendant was also able to retain a private attorney, Mr. M. Engin Derkunt, to represent him during the February 1, 2008 criminal contempt proceeding.  (D.E. (1) 3; D.E. (1) 4.)

**H.     Prior Sanctions.**

During the February 1, 2008 criminal contempt hearing, the Court also accepted into evidence several orders from other federal courts sanctioning Defendant Lincoln for various reasons.  See <u>Jaikaran v. U.S. Bank</u>, C.A. H-06-1479 (S.D. Tex. Aug. 14, 2006) (ordering the arrest of Defendant Lincoln for failure to appear); <u>Aames Capital Corp. v. Lincoln</u>, No. A-04-CA-614-SS (W.D. Tex. Mar. 16, 2005) (denying Defendant Lincoln's motion to vacate orders by a particular judge as "frivolous"); <u>Aames Capital Corp. v. Lincoln</u>, No. A-04-CA-614-SS (W.D. Tex. Feb. 17, 2005) (chastising Defendant Lincoln for the use of delay tactics, including the filing of frivolous motions to recuse and frivolous discovery motions); <u>In re: Charles Edward Lincoln, III</u>, No. 03-03-00459-CV (Tex. App. – Austin Aug. 22, 2003) (ordering Defendant Lincoln to appear and show cause why he should not be sanctioned for filing frivolous motions with the court); <u>In re: Charles Edward Lincoln</u>, Case No. 01-C-04695-AIN, Case No. 02-J-11673-AIN (Ca. State Bar Court June 18, 2003) (recommending that Defendant Lincoln be disbarred from the practice of law); <u>USA v. Lincoln</u>, 1:99-cr-00275-WSSM (W.D. Texas Dec. 7, 1999) (criminal case in which Defendant Lincoln plead guilty to false representation of a social security number); <u>Viola v. Collins</u>, 1:97-cv-00164-JRN (W.D. Tex. July 31, 1997) (dismissing a case brought by Defendant Lincoln based in part on Defendant Lincoln's refusal to obey court orders and filing of frivolous motions designed to burden opposing counsel).  Defendant Lincoln did not object to the admission of any of these orders.

**I.     Defendant Lincoln's Testimony During the February 1, 2008 Hearing.**

At the close of the criminal contempt hearing, the Court asked Defendant Lincoln whether he wished to make a statement on the record.  (2/1/08 Hearing at 2:14:56-

10

2:20:11.)  Defendant Lincoln responded, through his attorney, that he would.  (Id.)  Once sworn, Defendant Lincoln apologized to the Court for his misconduct, stating "I apologize – I apologize to you and I apologize to this Court for any misconduct on my part, every misconduct on my part, in relation to this case."  (Id.)  He also discussed at length the "valuable lessons" that he had learned while incarcerated, stating "I feel that I've learned valuable lessons … I have a book worth of learning to report from the experiences I've had … It's been a very valuable experience, I dare say a life changing experience."  (Id.)

Defendant Lincoln also took the opportunity to reference materials filed in Sibley v. Lincoln, 2:07-cv-258, which he asserted demonstrate that he was a citizen of Florida at the time the case was filed, and at the time he filed his notice of removal.  (Id.)  Specifically, Defendant Lincoln referenced his own affidavit, filed June 12, 2007, in which he asserted that he was a citizen of Florida.  (Id.; D.E. (258) 7.)  He acknowledged that he had a residence in Lago Vista, Texas, but stated that "that house and all my other property in Texas is held in a Trust for my son and has been leased out."  (Id.)  Defendant Lincoln also discussed the affidavit of Helir Arlotta, a close friend of his, which he asserted had been filed in Sibley v. Lincoln, 2:07-cv-258; however, he was not able to find Ms. Arlotta's affidavit on the docket sheet.  (2/1/08 Hearing at 2:14:56-2:20:11.)

At no time during the hearing did Defendant Lincoln provide the Court with any indication that he had been *unable* to attend the July 23, 2007 and September 7, 2007 hearings for any reason.  Rather, he merely reiterated, through his attorney, his belief that the Court lacked jurisdiction to consider a motion for sanctions filed in a federal court after that court had remanded the underlying action to state court.  See supra footnote 1.

**II.     Discussion.**

    **A.     Criminal Contempt Standard.**

18 U.S.C. §401(3) provides that a federal court may "punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as … [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." The elements of a violation of §401(3) are "(1) a reasonably specific order; (2) violation of the order; and (3) the willful intent to violate the order." United States v. Landerman, 109 F.3d 1053, 1068 (5th Cir. 1997); In re Hipp, Inc., 5 F.3d 109, 112 (5th Cir. 1993); Cooper v. Texaco, 961 F.2d 71, 72 n.3 (5th Cir. 1992). "Determining whether an order is specific requires a factual inquiry into the reasonableness of the order's specificity, given the context in which it was issued." Hipp, 5 F.3d at 112; United States v. Revie, 834 F.2d 1198, 1201 (5th Cir. 1987). Any ambiguity in the order, however, "must be resolved in favor of the defendant." Cooper, 961 F.2d at 72 (citing United States v. O'Quinn, 913 F.2d 221, 222 (5th Cir. 1990)).

    **B.     Criminal Contempt Finding.**

After considering all evidence presented during the February 1, 2008 criminal contempt hearing, as well as the arguments of counsel, the Court finds the following facts beyond a reasonable doubt:

1.     The Court orders requiring that Defendant Lincoln appear before this Court on July 23, 2007, and September 7, 2007, were reasonably specific. (D.E. (258) 10; D.E. (258) 16 at 3; D.E. (258) 24 at 1; D.E. (75) 1 at 8.)

2.     Defendant Lincoln violated these orders. He did not appear at the July 23, 2007 hearing, or the September 7, 2007 hearing. See supra sections I(C) & I(E).

3. Defendant Lincoln's violation of these orders was willful. Defendant Lincoln's voluminous filings and emails to the Court make clear that he was fully aware of the scheduled hearing dates and times. Specifically:

(1) On Thursday, July 19, 2007, Defendant Lincoln filed a motion titled "Defendant Charles Edward Lincoln's Motion for Continuance of Hearing on Sanctions Set **Monday July 23 2007**." (D.E. (258) 14 (emphasis added));

(2) On Friday, July 20, 2007, Defendant Lincoln sent an email to Ms. Scotch stating, "It is 5:25 in Florida right now. I am quite unable to attend court on **Monday**!" (D.E. (258) 19 (emphasis added));

(3) On Sunday, July 22, 2007, Defendant Lincoln sent Ms. Scotch an email stating, "I cannot attend the hearing **Monday morning** in Corpus Christi." (D.E. (258) 21 (emphasis added));

(4) On Friday, July 27, 2007, after the entry of the Court's notice of criminal contempt proceeding, Defendant Lincoln sent Ms. Scotch an email, titled "Contempt charges???," requesting that the Court appoint a public defender to represent him at the September 7, 2007 hearing. (D.E. (75) 2);

(5) On Wednesday, September 5, 2007, Defendant Lincoln's would-be attorney, Jerry O'Neil, filed a motion for leave to appear, in which he expressly acknowledged Defendant Lincoln's obligation to attend the September 7, 2007 hearing, stating, "It is my further understanding that Judge Jack has also ordered Charles Edward Lincoln to appear on **September 7, 2007, at 1:15 p.m.** …" (D.E. (75) 9 at 3 (emphasis added));

(6) On Wednesday, September 5, 2007, Defendant Lincoln sent Ms. Scotch and the Assistant U.S. Attorneys prosecuting the criminal contempt charge against him an email acknowledging that "there is a hearing set for **Friday afternoon** which neither Senator O'Neil nor I can possibly attend …" (D.E. (75) 12 (emphasis added)); and

(7) On Friday, September 7, 2007, at 12:43 a.m., Defendant Lincoln sent Ms. Scotch, Mr. Sibley, and the Assistant U.S. Attorneys prosecuting the criminal contempt charge against him an email acknowledging the existence of the hearing later that day, and purporting to file documents in lieu of attending. (D.E. (75) 16).

Despite Defendant Lincoln's clear knowledge of the scheduled hearing dates and times, he declined to attend either hearing. Furthermore, he did not, at any time, provide the Court with any viable explanation for his inability to attend; rather, he merely contested – repeatedly and at length – his obligation to appear before the Court. Defendant Lincoln's deliberate and obstinate refusal to appear before this Court constitutes a willful and contemptuous violation of the Court's orders.

4.  Accordingly, the Court finds Defendant Lincoln GUILTY of criminal contempt, pursuant to 18 U.S.C. § 401(3), and sentences him to time served.[11]

In addition, the Court finds the following facts by a preponderance of the evidence:

5.  Defendant Lincoln was a citizen of Texas at the time he filed his notice of removal, representing to this Court and to the Texas state court from which Sibley v. Lincoln was removed that he was a citizen of Florida. See supra section I(G).

6.  Despite this misrepresentation, the Court declines to impose sanctions against Defendant Lincoln pursuant to Federal Rule of Civil Procedure 11. The Court leaves it within the discretion of the Texas state court, in which Sibley v. Lincoln is currently pending, to determine whether sanctions are appropriate.

---

[11] Defendant Lincoln was incarcerated from December 9, 2007, until February 1, 2008.

**III.     Conclusion.**

For the reasons discussed above, the Court holds Defendant Lincoln in criminal contempt and sentences him to time served.

Final judgment shall issue accordingly.

SIGNED and ENTERED this 22 day of February, 2008.

_____
Janis Graham Jack
United States District Judge